UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| CHAD DENNIS NORD and DENNIS NORD, d/b/a NORD TRUCKING, | Civil No. 05-1135 (PJS/RLE) |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION AND ORDER |
| DONALD MICHAEL KELLY and RED LAKE NATION TRIBAL COURT, | |
| Defendants. | |

---

Timothy J. Crocker, Roger H. Gross, GISLASON & HUNTER LLP, 701 Xenia Avenue South, Suite 500, Minneapolis, MN 55416; Charles R. Powell, POWELL LAW FIRM, P.O. Box 908, Bemidji, MN 56619, for plaintiffs.

Thomas J. Peckham, Doreen N. Hobson, Alan R. Taradash, NORDHAUS LAW FIRM, 405 Dr. Martin Luther King Avenue Northeast, Albuquerque, NM 87102; Joseph M. Plumer, PLUMER LAW OFFICE, 9352 Grace Lake Road North, Bemidji, MN 56601, for defendant Red Lake Nation Tribal Court.

Gary M. Hazelton, HAZELTON LAW FIRM PLLC, P.O. Box 1248, Bemidji, MN 56619, for defendant Donald Michael Kelly.

This case arises out of an automobile accident that occurred on December 16, 2000 within the confines of the Red Lake Indian Reservation in northern Minnesota. Defendant Donald Michael Kelly ("Kelly"), who is a member of the Red Lake Band of Chippewa Indians ("Red Lake Band"), brought a personal-injury action against plaintiffs Chad Nord and his father Dennis Nord ("the Nords"), who are not members of the Red Lake Band. Kelly sued the Nords in defendant Red Lake Nation Tribal Court ("Tribal Court"). The Nords then filed this action, seeking a declaration that the Tribal Court lacks personal and subject-matter jurisdiction over

them. This Court has jurisdiction over the Nords' declaratory-judgment action under 28 U.S.C. § 1331. *See Strate v. A-1 Contractors*, 520 U.S. 438, 448 (1997); *Nat'l Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 852-53 (1985).

There are three motions pending before the Court. First, the Nords move for summary judgment. Second, the Tribal Court moves to dismiss the Nords' complaint for failure to state a claim. Finally, the Tribal Court moves in the alternative for an order continuing the summary-judgment hearing and permitting discovery under Rule 56(f) of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, the Court grants the Nords' motion and denies the Tribal Court's motions.[2]

## I. BACKGROUND

On December 16, 2000, Chad Nord was driving a semi-truck on Minnesota Highway 1 within the Red Lake Indian Reservation when he rear-ended a car driven by Kelly. The semi-truck was owned by Nord Trucking, which is apparently either a partnership or a sole proprietorship (the record is not entirely clear). Nord Trucking had contracted with the Red Lake Band to haul timber from the reservation. But Chad Nord swears in an affidavit that he was on a private errand at the time of the accident, *see* Crocker Aff. Ex. D ¶ IV (April 7, 2006), and the Tribal Court has no reason to disbelieve him. The Red Lake Tribal Police Department,

---

[1] Kelly filed a memorandum opposing the Nords' motion for summary judgment, but otherwise did not participate in the arguments before the Court. The Court will address all of the arguments raised by either defendant, but, for the sake of simplicity, will refer only to the Tribal Court.

[2] Counsel for all of the parties have been very helpful, but the Court wishes to express particular gratitude to Thomas J. Peckham. The Tribal Court has been exceptionally well represented by Mr. Peckham in this proceeding.

the Red Lake Nation Law Enforcement Services, and the Red Lake Ambulance Service all responded to the accident. No county or state official appeared at the scene.

Kelly filed a personal-injury action against the Nords in the Tribal Court, alleging that Chad Nord was negligent and that, at the time of the accident, Chad Nord was acting within the scope of his employment with Dennis Nord, d/b/a Nord Trucking. The Nords filed a motion to dismiss for lack of jurisdiction in the Tribal Court on October 30, 2003. Second Peckham Decl. Exs. 31, 32. After waiting for over a year for a decision on that motion, the Nords filed this declaratory-judgment action on June 10, 2005. On September 28, 2005, nearly two years after the original motion was filed, the Tribal Court held that it had jurisdiction and denied the Nords' motion to dismiss. Second Peckham Decl. Exs. 40, 41. The Nords appealed, and the parties stipulated to a stay of this case until that appeal was resolved. *See* Docket No. 43. The Red Lake Court of Appeals affirmed the Tribal Court's decision on February 2, 2006. Second Peckham Decl. Ex. 53. The Nords now seek a declaration that the Tribal Court and the Red Lake Court of Appeals were wrong in holding that the Tribal Court could exercise jurisdiction over Kelly's claims against them.

## II.  ANALYSIS

### A.  *Standard of Review*

In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Maki v. Allete, Inc.*, 383 F.3d 740, 742 (8th Cir. 2004); *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 (8th Cir. 2003). "'[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief.'" *Rucci v. City of Pac.*, 327 F.3d 651, 652 (8th Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  Although the pleading standard is liberal, a plaintiff must allege facts, and not merely legal conclusions, if he or she wishes to survive a Rule 12(b)(6) motion.  *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1062 (8th Cir. 2005); *DuBois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1022 (8th Cir. 2002).

In reviewing a motion for summary judgment, a court must examine "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to determine whether any "genuine issue as to any material fact" precludes the moving party from receiving judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A dispute over a fact is "material" only if its resolution might affect the outcome of the action under the governing substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could . . . return a verdict for [the non-movant]."  *Baucom v. Holiday Cos.*, 428 F.3d 764, 766 (8th Cir. 2005).  The court must resolve factual disputes in favor of the nonmoving party.  *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*, 824 F.2d 582, 585 (8th Cir. 1987).

Finally, as to the Tribal Court's Rule 56(f) motion:  "Although discovery need not be complete before a case is dismissed, summary judgment is proper only if the nonmovant has had adequate time for discovery."  *Robinson v. Terex Corp.*, 439 F.3d 465, 467 (8th Cir. 2006).  Under Rule 56(f), a party may ask a court to delay ruling on a motion for summary judgment if the party can make a good-faith showing that such a delay would enable it to discover additional evidence that could demonstrate the existence of a factual issue.  *Id*.  Needless to say, though, the

potential factual dispute must concern a material fact — that is, a fact that might affect the outcome of the action under the governing substantive law. Without such a showing, a court may grant a motion for summary judgment even if no discovery whatsoever has been taken. *Pony Computer, Inc. v. Equus Computer Sys. of Mo., Inc.*, 162 F.3d 991, 996 (8th Cir. 1998).

### B. Tribal-Court Jurisdiction

The Nords seek both a declaratory judgment that the Tribal Court lacks personal and subject-matter jurisdiction over Kelly's claims against them and an injunction prohibiting Kelly from proceeding further in the Tribal Court. The parties agree that this case is controlled by *Strate v. A-1 Contractors*, 520 U.S. 438 (1997). The question presented in *Strate* was precisely the question presented in this case:

> When an accident occurs on a portion of a public highway maintained by the State under a federally granted right-of-way over Indian reservation land, may tribal courts entertain a civil action against an allegedly negligent driver and the driver's employer, neither of whom is a member of the tribe?

*Id.* at 442.

On its way to answering "no" to that question, the Supreme Court explained that, in general, the inherent powers of an Indian tribe do not extend to the activities of nonmembers of the tribe, absent an express delegation by treaty or statute. *Strate*, 520 U.S. at 445-46 (citing *Montana v. United States*, 450 U.S. 544, 565 (1981)). This general rule is subject to two exceptions. First, "'[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements.'" *Id.* at 446 (quoting *Montana*, 450 U.S. at 565). Second, a tribe "'retain[s] inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens

or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.'" *Id.* (quoting *Montana*, 450 U.S. at 566). These two exceptions are sometimes referred to as the "*Montana* exceptions" to the general rule that a tribe may not exercise authority over nonmembers.

Applying these principles to the facts in *Strate*, the Court held that, absent a statute or treaty authorizing the exercise of tribal jurisdiction, "tribal courts may not entertain claims against nonmembers arising out of accidents on state highways[.]" *Strate*, 520 U.S. at 442. The Court based this decision on the fact that the state maintained the highway under a federally-granted right-of-way that rendered the stretch of road the equivalent of alienated, non-Indian land. *Strate*, 520 U.S. at 442-43, 454.

> Forming part of the State's highway, the right-of-way is open to the public, and traffic on it is subject to the State's control. The Tribes have consented to, and received payment for, the State's use of the 6.59-mile stretch for a public highway. They have retained no gatekeeping right. So long as the stretch is maintained as part of the State's highway, the Tribes cannot assert a landowner's right to occupy and exclude.

*Strate*, 520 U.S. at 455-56 (footnote omitted). Because the tribe had lost the "'right of absolute and exclusive use and occupation,'" *Strate*, 520 U.S. at 456 (quoting *South Dakota v. Bourland*, 508 U.S. 679, 689 (1993)), the tribal court lacked jurisdiction over claims against the nonmember defendants. *Strate*, 520 U.S. at 456, 459.

This case is on all fours with *Strate*. This case, like *Strate*, involves the question whether "tribal courts [may] entertain a civil action against an allegedly negligent driver and the driver's employer, neither of whom is a member of the tribe," in connection with "an accident [that] occur[red] on a portion of a public highway maintained by the State under a federally granted right-of-way over Indian reservation land." The Tribal Court does not contend that there is a

statute or treaty authorizing its exercise of jurisdiction. Thus, under *Strate*, it appears that the Tribal Court cannot exercise jurisdiction over Kelly's claims against the Nords.

The Tribal Court tries to escape *Strate* by questioning the validity of the right-of-way over the portion of Minnesota Highway 1 on which the Nord-Kelly accident occurred. That right-of-way was granted by the federal government to the State of Minnesota in 1955. *See* Olson Aff. Ex. C (Bureau of Indian Affairs right-of-way map bearing signed approval of a Bureau superintendent); Olson Aff. Ex. B, Fourth and Fifth Components[3] (application for public highway and stipulation). The Tribal Court relies most heavily on its contention that the stipulation included in the application for the right-of-way did not expressly agree to certain required conditions, as mandated by then-existing federal regulations governing rights-of-way over Indian lands. *See* 25 C.F.R. pt. 256 (1954 Supp.).[4] The stipulation stated, instead, that the Commissioner of Highways "agrees to conform and abide by all pertinent rules and regulations of the Department of the Interior with special reference to Departmental Regulations 25 CFR 256.7 (a), (b) and (c)[.]" Olson Aff. Ex. B, Fifth Component. Because this stipulation did not refer specifically to clauses (d) and (e) of 25 C.F.R. § 256.7, the Tribal Court argues, it failed to comply with 25 C.F.R. § 256.7.

This argument is meritless. The stipulation expressly stated that the Commissioner "agrees to conform and abide by *all* pertinent rules and regulations of the Department of the

---

[3]The pages in Exhibit B attached to Ronald J. Olson's affidavit are not numbered or otherwise easily distinguishable. They have been separated into sections, which the Nords number and refer to as "components."

[4]All citations to the Code of Federal Regulations in this opinion are to the 1954 pocket supplement containing part 256 of Title 25.

Interior," which included 25 C.F.R. § 256.7. "All" means "all." Why the stipulation made "special reference" to three of the regulations is not clear, but it is also not important. The Commissioner clearly agreed to abide by "all" applicable rules and regulations; clauses (d) and (e) were unquestionably applicable regulations; and thus the Commissioner unquestionably agreed to abide by clauses (d) and (e) (along with the rest of 25 C.F.R. § 256.7).

The Tribal Court also refers to unspecified "drafting requirements" that it alleges were not met and contends that the engineer failed to certify the approved survey map, as required by the version of 25 C.F.R. § 256.13 in force at the time. As the Nords point out, however, the time for objecting to these alleged deficiencies has long since passed. *See* 25 C.F.R. § 256.31 (requiring that an appeal from a decision of a superintendent of the Bureau of Indian Affairs be filed within 30 days of receipt of notice of the decision). Relying on the validity of the right-of-way, the State of Minnesota built Highway 1, paid compensation to tribal members for the land on which Highway 1 was built,[5] maintained Highway 1 for over half of a century, and continues to maintain Highway 1. If the Red Lake Band or anyone else had an objection to the right-of-way, the time to raise that objection was 50 years ago, and the entity to which to raise that objection was the BIA.

Ultimately, though, the Tribal Court's attack on the validity of the right-of-way is not its primary argument for escaping *Strate*. The Tribal Court conceded at oral argument that, at a minimum, the State of Minnesota acquired the right to build, maintain, and exert at least "limited

---

[5]Individual tribal members were compensated, but the tribe as a whole waived compensation. *See* 25 C.F.R. §§ 256.7, 256.14 (describing requirements for right-of-way applications and schedule of damages); Olson Aff. Ex. B, Fourth and Fifth Components (letter stating that compensation for tribe is waived with attached schedule of damages for individual tribal members).

control" over Minnesota Highway 1.  Likewise, the Tribal Court conceded that Highway 1 is open to public use.  The Tribal Court thus does not really contest that the Red Lake Band gave up *some* of its rights over the land on which Highway 1 was built.  But the Tribal Court insists that discovery and perhaps a trial are necessary to determine precisely *what* rights the tribe relinquished.  Whether the Tribal Court is correct depends on how *Strate* is interpreted.

This is the crux of the case.  According to the Nords, it does not matter precisely what rights the Red Lake Band relinquished.  As long as the tribe no longer possesses the "'right of *absolute* and *exclusive* use and occupation'" over the location of the Nord-Kelly accident — that is, as long as the State enjoys *any* kind of right-of-way over that section of highway — then *Strate* deprives the Tribal Court of jurisdiction over Kelly's lawsuit against the Nords.  *Strate*, 520 U.S. at 456 (quoting *Bourland*, 508 U.S. at 689) (emphasis added).

The Tribal Court disagrees.  It regards the Nords' reading of *Strate* as too rigid and formalistic.  The Tribal Court stresses that, when it comes to federally granted rights-of-way, one size does not fit all.  Rather, the federal government has granted a wide variety of rights over portions of Indian reservation land.  According to the Tribal Court, *Strate* requires — or at least permits — a fact-intensive analysis to determine exactly what rights were granted over the relevant section of highway and to determine exactly how much control the tribe has exercised in practice over that section of highway.  Only after undertaking such an analysis can a federal court determine whether a tribal court may exercise jurisdiction over a nonmember whose negligence causes an accident on a state highway within an Indian reservation.[6]

---

[6]The Tribal Court further argues that, if this Court accepts its reading of *Strate*, the Tribal Court should be allowed to take discovery and fully develop a record on how the State of Minnesota and the Red Lake Band have interpreted the right-of-way to Highway 1.

The Court has some sympathy for the Tribal Court's argument about how *Strate should* have been decided. But this Court is obligated to apply *Strate* as it *was* decided. Having reviewed *Strate* with care, the Court concludes that the Nords' reading is correct: If the federal government has granted any kind of a right-of-way over reservation land, the tribal court may not exercise jurisdiction over claims against nonmembers arising out of automobile accidents that occur on that land, unless one of the *Montana* exceptions applies. The Court reaches this conclusion for three reasons:

First, the holding of *Strate* — as opposed to some of the dicta that it uses on the way to reaching its holding — is quite categorical: "[T]ribal courts may not entertain claims against nonmembers arising out of accidents on state highways, absent a statute or treaty authorizing the tribe to govern the conduct of nonmembers on the highway in question." *Strate*, 520 U.S. at 442. In light of that rather emphatic language, it would take a lot to persuade this Court to permit the Tribal Court to entertain claims against the Nords arising out of an accident on Minnesota Highway 1, given the undisputed fact that no statute or treaty authorizes the Red Lake Band to govern the conduct of nonmembers on the portion of Highway 1 in question.

Second, there is evidence in *Strate* confirming that the Supreme Court meant exactly what it said. In general, litigants who object to a tribal court's jurisdiction must exhaust tribal-court remedies before seeking a federal injunction. But the Supreme Court created an exception to this exhaustion requirement for the *Strate* situation:

> When, as in this case, it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by *Montana*'s main rule, it will be equally evident that tribal courts lack adjudicatory authority over disputes arising from such conduct. . . . Therefore, when tribal-court jurisdiction over an action such as this one is challenged in federal court, the otherwise applicable

>   exhaustion requirement must give way, for it would serve no purpose other than delay.

*Strate*, 520 U.S. at 459 n.14 (citations omitted).

This passage strongly suggests that the Supreme Court envisioned that this inquiry would normally be just as formalistic and rigid as the Nords claim.  The tribal court is deprived of jurisdiction as long as the State enjoys *any* kind of right-of-way over the relevant section of highway, and the determination whether a State enjoys any kind of right-of-way over the relevant section of highway will usually be "plain" from readily available public documents and widely known facts (such as the logo on the side of the trucks that maintain the highway).  Thus, requiring challenges to jurisdiction to first be litigated in a tribal court "would serve no purpose other than delay."  *Id.*

By contrast, eliminating the exhaustion requirement would be unimaginable if, as the Tribal Court argues, the question whether a tribe can exercise jurisdiction depends on an exhaustive and complex inquiry to determine not only the precise scope of the rights given in the relevant legal documents, but the precise scope of the control that the tribe has actually exercised over a section of highway during the past few decades.  If the Tribal Court's reading of *Strate* is correct, then the resolution of the jurisdictional issue would rarely be "plain," and there would be more, not less, reason to require exhaustion.  *See Nat'l Farmers Union*, 471 U.S. at 856-57 (explaining that considerations of comity favor allowing tribal courts the "first opportunity to evaluate the factual and legal bases for the [jurisdictional] challenge"); *Duncan Energy Co. v. Three Affiliated Tribes of the Fort Berthold Reservation*, 27 F.3d 1294, 1300 (8th Cir. 1994) ("the requirement of tribal exhaustion contemplates the development of a factual record that will serve the 'orderly administration of justice in the federal court'") (quoting *Nat'l Farmers Union*,

471 U.S. at 856). *Strate*'s elimination of the exhaustion requirement is obviously very difficult to reconcile with the Tribal Court's position.

Finally, federal courts asked to interpret *Strate* have seemed sympathetic to the Nords' reading and unsympathetic to the Tribal Court's. *See, e.g., Boxx v. Long Warrior*, 265 F.3d 771, 775 (9th Cir. 2001) (rejecting, under a "plain reading" of the right-of-way, the tribe's contention that it retained a gatekeeping right over the road), *disapproved on other grounds, Smith v. Salish Kootenai Coll.*, 434 F.3d 1127, 1137 n.4 (9th Cir. 2006); *Burlington N. R.R. Co. v. Red Wolf*, 196 F.3d 1059, 1063 (9th Cir. 1999) (concluding that a railroad right-of-way was equivalent to alienated, non-Indian land); *Mont. Dep't of Transp. v. King*, 191 F.3d 1108, 1113 (9th Cir. 1999) (applying *Strate* where a tribe attempted to regulate workers performing maintenance on a state highway); *Wilson v. Marchington*, 127 F.3d 805, 813-14 (9th Cir. 1997) (applying *Strate* where the general public had unrestricted access to a federal highway that was "designed, built, and maintained by the State of Montana" with tribal consent). Like the Supreme Court in *Strate* — and like this Court in the present case — these courts have reviewed publicly-available documents creating the right-of-way and publicly-available regulations existing at the time that the right-of-way was created. But none of these courts has engaged in the kind of wide-ranging, complex factual inquiry urged by the Tribal Court here.

The Tribal Court cites *McDonald v. Means*, 309 F.3d 530 (9th Cir. 2002), for the proposition that courts must examine the "nature and use of the particular right-of-way to determine whether a tribe retained jurisdiction by retaining significant control over the right-of-way." Tribal Court's Resp. Pl.'s Summ. J. 15. *McDonald* is readily distinguishable, though, because it involved a Bureau of Indian Affairs reservation road, which the Ninth Circuit

-12-

determined was a "tribal road" expressly exempted from the direct scope of *Strate*. *McDonald*, 309 F.3d at 537. The Ninth Circuit went on to examine a number of factors to determine if the tribal road (not state highway) nevertheless came within the rule of *Strate*. *McDonald*, 309 F.3d at 538-39. Even so, the Ninth Circuit did not consider the parties' actual historical course of conduct concerning the road. Instead, the court looked to relevant legal doctrines and federal regulations to conclude that reservation roads in general are subject to much more tribal control than state highways. *McDonald*, 309 F.3d at 537-40. *McDonald* does not establish any need for the development of the factual record beyond what is already before this Court.

In sum, this Court holds that, under *Strate*, a tribal court may not exercise jurisdiction over a nonmember who is involved in an automobile accident on reservation land if the tribe has lost the "'right of absolute and exclusive use and occupation'" of that land. *Strate*, 520 U.S. at 456 (quoting *Bourland*, 508 U.S. at 689). If the federal government has granted any kind of right-of-way over a portion of a road — no matter what the scope of that right-of-way and no matter how much tribal control has been exercised over that portion of the road in practice — the tribe no longer has the "right of absolute and exclusive use and occupation," and the tribal court may not exercise jurisdiction over the nonmember unless one of the *Montana* exceptions applies.

The Court now turns to those exceptions.

### C. The *Montana* Exceptions

Under the first *Montana* exception, tribes retain some authority to regulate the conduct of nonmembers who enter consensual relationships with the tribe or its members. *Strate*, 520 U.S. at 446. The only evidence before the Court concerning the purpose of Chad Nord's trip on the day of the accident is his own affidavit, in which he asserts that he was on a personal errand.

Crocker Aff. Ex. D ¶ IV (April 7, 2006).  The Tribal Court has no evidence contradicting Chad Nord's sworn statement, and, at oral argument, the Tribal Court conceded that it does not have any reason to believe that discovery will uncover such evidence.  The fact that, at the time of the accident, Chad Nord was driving a semi-truck used to haul timber under a contract with the Red Lake Band does not distinguish this case from *Strate*.  There, as here, the allegedly negligent driver was driving a truck used to do work under a contract with the tribe.  *Strate*, 520 U.S. at 443.

Under the second *Montana* exception, tribes retain authority over nonmember conduct that "'threatens or has some direct effect on the political integrity, the economic security, or the health and welfare of the tribe.'"  *Strate*, 520 U.S. at 457 (quoting *Montana*, 450 U.S. at 566).  The Tribal Court contends that, because Kelly is a tribal member, the accident affected both the economic security and the health and welfare of the tribe.  The Tribal Court's argument has surface appeal.  But *Strate* squarely forecloses the applicability of the second *Montana* exception in these circumstances:  "Undoubtedly, those who drive carelessly on a public highway running through a reservation endanger all in the vicinity, and surely jeopardize the safety of tribal members.  But if *Montana*'s second exception requires no more, the exception would severely shrink the rule."  *Strate*, 520 U.S. at 457-58; *see also Wilson*, 127 F.3d at 815 (holding that the tribal court lacked jurisdiction over a case involving a member plaintiff and a nonmember defendant).  Because neither of the *Montana* exceptions applies, the Tribal Court lacks jurisdiction over Kelly's claims against the Nords.

*D.  Exhaustion*

As noted, litigants challenging the jurisdiction of a tribal court are generally required to exhaust tribal-court remedies before proceeding to federal court. *See Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 15-18 (1987); *Nat'l Farmers Union*, 471 U.S. at 856-57. But, as also noted, *Strate* created an exception to the exhaustion requirement that applies under the circumstances of this case. *Strate*, 520 U.S. at 459 n.14. Thus, the Nords were not required to exhaust tribal-court remedies.

Even if exhaustion was required, the Nords met that requirement. The Nords objected to jurisdiction in the Tribal Court, appealed the Tribal Court's decision, and obtained a ruling from the Red Lake Court of Appeals. Second Peckham Decl. Exs. 40, 41, 53. True, the Nords did not make their jurisdictional argument as clearly or comprehensively as they should have, but they did make the argument, and the Tribal Court had before it all of the evidence on which this Court has relied.

Finally, the Tribal Court argues that, because the Nords assert that *Strate* applies, the Nords ought to have proceeded directly to federal court and *not* exhausted their tribal-court remedies. Having elected to bring a motion to dismiss in the Tribal Court, the Tribal Court contends, the Nords should be held to the consequences of their choice, and the Court should give deference to the Tribal Court's finding that there was no valid right-of-way.

There are two problems with this argument. First, the Nords were driven to federal court in part by the conduct of the Tribal Court. The Nords initially tried to make use of the Tribal Court process. Only after waiting a year in vain for a decision did the Nords turn to the federal courts. (The Nords then had to wait a second year for the Tribal Court's decision.) Second, even if the Court were to review the Tribal Court's decision under a deferential standard of

-15-

review, the Court would nevertheless hold that the Tribal Court's finding regarding the right-of-way was clearly erroneous.

The Tribal Court itself characterizes the application of the exhaustion requirement to the circumstances of this case as raising difficult and uncertain legal questions. It would thus not be equitable, under these circumstances, to hold that the Nords relinquished their right to federal review. The Nords are entitled to summary judgment.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant Red Lake Nation Tribal Court's motion to dismiss [Docket No. 48] and motion to continue hearing and for Rule 56(f) discovery [Docket No. 92] are DENIED.

2. Plaintiffs' motion for summary judgment [Docket No. 59] is GRANTED.

3. The Court hereby DECLARES that defendant Red Lake Nation Tribal Court lacks jurisdiction over any claims related to the car accident that occurred on December 16, 2000 and brought by defendant Donald Michael Kelly against plaintiffs Chad Dennis Nord and Dennis Nord, d/b/a Nord Trucking. And

4. Defendants Red Lake Nation Tribal Court and Donald Michael Kelly are hereby PERMANENTLY ENJOINED from proceeding further in the Red Lake Nation Tribal Court against plaintiffs Chad Dennis Nord and Dennis Nord, d/b/a Nord Trucking, in connection with any claims arising out of the accident described in paragraph 3 of this Order.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 31, 2007                          s/Patrick J. Schiltz
                                                 Patrick J. Schiltz
                                                 United States District Judge